# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CASSANDRA M. BELL,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    *Defendant.*

Case No. 13-1310-EFM

## MEMORANDUM AND ORDER

Plaintiff Cassandra Bell seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff alleges that the administrative law judge ("ALJ") erred in denying her benefits because substantial evidence did not support the decision. Having reviewed the record, and as described below, the Court affirms the order of the Commissioner.

### I.    Factual and Procedural Background

Cassandra Bell was born on February 19, 1980. On November 16, 2009, Bell applied for Disability Insurance Benefits alleging that she became disabled on August 8, 2009. Bell alleged that she was unable to work due to Graves' disease, left eye blindness, headaches, and back

problems. Her application was denied initially and upon reconsideration. Bell then asked for a hearing before an ALJ.

ALJ John Langland conducted an administrative hearing on March 2, 2012. Bell was represented by counsel at this hearing, and Bell testified about her medical conditions. The ALJ also heard from a vocational expert.

On June 18, 2012, the ALJ issued his written decision, finding that Bell had not engaged in substantial gainful activity since the alleged onset date. The ALJ found that Bell suffered from Graves' disease/induced hypothyroidism status post thyroidectomy, recurrent laryngitis, headaches, sleep apnea, hypertension, history of temporomandibular joint pain, mild degenerative disc disease of the cervical spine, history of functional vision loss on the left, and somatoform disorder/pain disorder. The ALJ found that Bell's impairment or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ determined that Bell had the RFC to "to perform a range of 'light work,' as that term is otherwise defined in 20 CFR 404.1567(b)."[1] The ALJ then determined that Bell was unable to perform any past relevant work. After considering Bell's age, education, work experience, and RFC, the ALJ found that jobs existed in the national economy that Bell could perform. Thus, the ALJ concluded that Bell had not been under a disability from August 8, 2009, through the date of his decision.

---

[1] ALJ Decision, Doc. 12-2, p. 15.

Given the unfavorable result, Bell requested reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Bell's request on June 19, 2013. Accordingly, the ALJ's June 2012 decision became the final decision of the Commissioner.

Bell then filed a complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision. Because Bell has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.   Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[6] This impairment "must be severe enough that he is unable to perform his past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering his age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

---

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[9] *Barkley*, 2010 WL 3001753 at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753 at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753 at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[14]

### III.   Analysis

Plaintiff broadly contends that there is not substantial evidence to support the ALJ's decision. Plaintiff first asserts that the ALJ's RFC assessment gave no consideration to her somatoform disorder and instead only gave credence to Plaintiff's physiological diagnoses.[15] The Court finds to the contrary. At step two, the ALJ listed the somatoform disorder as a severe impairment. The ALJ then discussed Plaintiff's somatoform disorder in determining her RFC. The ALJ specifically noted that there was "some indication in the record that the claimant may have a somatoform disorder given the lack of an observable etiology for her subjective complaints."[16] The ALJ also discussed Plaintiff's stay at the Mayo Clinic in 2010 and noted her diagnoses at the clinic. After noting her physical maladies, he also stated that the records

---

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id*.

[15] "Somatoform disorders are characterized by physical complaints for which appropriate medical evaluation fails to reveal a physical pathology, or when such complaints, and any resulting impairment, is grossly in excess of what would be expected from a patient's diagnoses." *Wall v. Astrue*, 561 F.3d 1048, 1059 n. 18 (10th Cir. 2009).

[16] Doc. 12-2, p. 19.

indicated possible somatoform manifestations. When noting this somatoform disorder, the ALJ stated that while the physical examinations indicated medical problems, a doctor's note from the clinic indicated that Plaintiff's symptoms were "way out of proportion to these difficulties."[17] Furthermore, when evaluating another medical doctor's opinion, the ALJ gave that opinion substantial, but not full, weight because the ALJ found that this doctor did not address the possible implications of Plaintiff's somatoform disorder on Plaintiff's functioning. The ALJ appeared fully aware of Plaintiff's somatoform disorder and reviewed the evidence on record when determining Plaintiff's RFC.[18]

Plaintiff also appears to take issue with the ALJ's treatment of the medical doctors' opinions. Plaintiff argues that the ALJ selectively chose the evidence in the record to support his finding while he ignored the other evidence contradicting his conclusions. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants."[19] Some of the relevant factors when considering medical opinion evidence include: (1) the relationship between the claimant and the doctor, including the length of treatment relationship and frequency of examinations, (2) the medical evidence supporting the opinion, (3) the consistency of the

---

[17] Doc. 12-2, p. 17.

[18] Plaintiff also asserts that the ALJ erred by not including fibromyalgia as one of Plaintiff's medically determined impairments. Although the ALJ did not specifically list fibromyalgia as an impairment, he did note in his RFC discussion Plaintiff's diagnosis of fibromyalgia. Under the regulations, an ALJ will consider all of a claimant's medically determinable impairments when determining a claimant's RFC even if those impairments are not found to be "severe." *See* 20 C.F.R. § 404.1545(a)(2). Because the ALJ noted Plaintiff's fibromyalgia, the ALJ was aware of Plaintiff's impairment. In any event, Plaintiff does not demonstrate that her fibromyalgia restricted Plaintiff beyond the ALJ's RFC determination.

[19] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (quotation marks and citation omitted).

opinion with the record as a whole, and (4) whether the doctor's specialty relates to the claimant's impairments.[20]

In this case, the ALJ discusses the medical evidence and opinions and provides reasons for accepting or rejecting those opinions. The ALJ states that he gave the opinion of Plaintiff's physician, Scott Rees, M.D., substantial but not controlling weight. Dr. Rees opined that Plaintiff could perform light work—which is what the ALJ ultimately determined as Plaintiff's RFC. The ALJ stated that he took issue with Dr. Rees' finding that Plaintiff required a chair lift because the limitation was not supported by other evidence in the record. Nevertheless, the ALJ still included a number of restrictions related to Plaintiff's potential problems with walking and standing. One of the restrictions that the ALJ included was the necessity of Plaintiff using a cane to walk throughout the workplace.

The ALJ also gave substantial, but not full, weight to a physical medical source statement from medical expert, Dr. Anne Winkler. In April 2012,[21] Dr. Winkler reviewed the entire record and found that Plaintiff was limited to a range of medium work. The ALJ noted that Dr. Winkler did not appear to consider Plaintiff's somatoform disorder on Plaintiff's functioning. Thus, although the ALJ gave her opinion substantial weight, the ALJ did not give Dr. Winkler's opinion full weight and instead assessed Plaintiff with greater functional limitations.[22] Accordingly, it appears as though the ALJ reviewed the evidence of record and made appropriate determinations as to the weight given to Dr. Winkler's opinion.

---

[20] 20 C.F.R. § 404.1527(c)(1)-(6).

[21] The ALJ held the hearing in this case in March 2012. Dr. Winkler's opinion was submitted post-hearing.

[22] It appears as though Dr. Winkler's opinion would have provided Plaintiff with more functionality than the ALJ assessed, but Plaintiff does not appear to challenge Dr. Winkler's opinion.

A state agency medical consultant, C.A. Parsons, M.D., also provided a medical opinion. In October 2010, Dr. Parsons reviewed the record and found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could stand and walk a total of two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. The ALJ gave Dr. Parsons's medical opinion substantial weight, noting that it was internally consistent with the evidence as a whole and well-supported. Plaintiff asserts that not all of the evidence was before Dr. Parsons and, thus, the ALJ did not have substantial evidence to support the giving it substantial weight. The ALJ, however, did not wholesale adopt Dr. Parson's opinion but instead limited Plaintiff's RFC. The ALJ stated that he was doing so because there was additional medical evidence of record and testimony. Thus, the ALJ took into account the later evidence and the effect of such evidence when considering Plaintiff's RFC.

The ALJ also considered Plaintiff's treating physician's, Dr. David Netherton's, November 2009 statement. Dr. Netherton believed that "no work activities are possible at this point."[23] The ALJ noted that a treating physician's opinion must be given controlling weight if well-supported and consistent with the evidence in the case. But the ALJ determined that Dr. Netherton's opinion should not be given controlling weight, and instead, was due little weight. In making this finding, the ALJ found that Dr. Netherton's opinion was without support from other evidence of record, did not appear to be based on physical findings, and was inconsistent with his own treatment notes. The ALJ also noted that treating source opinions on issues

---

[23] Doc. 12-2, p. 21.

Case 6:13-cv-01310-EFM   Document 33   Filed 05/12/15   Page 9 of 11

reserved to the Commissioner are not entitled to controlling weight.[24] Thus, the ALJ provided appropriate reasons for assigning Dr. Netherton's opinion little weight.

With regard to Dr. Kevin Fleming's February 2011 opinion, the ALJ similarly afforded his opinion little weight.  The ALJ noted that although Dr. Fleming opined that "somatization disorder is in fact disabling" and recommended partial or full disability, Dr. Fleming's own statement stated that he did "not perform disability examinations."[25] Again, the ALJ noted that the opinion of a disability was an issue reserved to the Commissioner. The ALJ found that the medical evidence of record did not support Dr. Fleming's opinion.  In addition, the ALJ found that Dr. Fleming did not offer specific functional limitations and provided little rationale for his opinion.

The ALJ also discussed Dr. Erik St. Louis's October 2010 report finding that it was entitled to little weight. In Dr. St. Louis's letter, he opined that he would support Plaintiff's short-term disability based on idiopathic hypersomnia, obstructive sleep apnea, and indeterminate spells. The ALJ assigned little weight to this opinion finding that his opinion appeared to be based, in part, on Plaintiff's subjective complaints.  In addition, the ALJ found that the opinion was without support from the record and lacked support from treatment notes. Finally, the ALJ noted that later evidence from 2012 indicated that subsequent treatment had helped Plaintiff's sleep issues.

Although Plaintiff contends that the ALJ selectively chose evidence to support his finding, it appears as though Plaintiff selectively chooses the evidence in her favor. Plaintiff asks

---

[24] *See* 20 C.F.R. § 404.1527(d) (stating that some opinions, such as a statement that the claimant is disabled, is an opinion on an issue reserved to the Commissioner).

[25] Doc. 12-2, p. 22.

the Court to reweigh the evidence in her favor and displace the ALJ's determination. The Court cannot do so. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[26] Even if the Court were to make different choice had the matter been before it *de novo*, the Court cannot displace the agency's choice.[27] In sum, the Court finds that substantial evidence supports the ALJ's determination.

Finally, Plaintiff alternatively asserts that the case should be remanded to consider new and material evidence. Plaintiff contends that evidence of her Behcet's Syndrome and avascular necrosis came to light after the administrative hearing and is relevant to the time period at issue. Pursuant to 42 U.S.C. § 405(g), a court may remand the case to the Commissioner to consider additional evidence but only upon a showing that the evidence is new and material and good cause exists for the failure to previously incorporate the evidence.[28] "[E]vidence is material if the Secretary's decision might reasonably have been different had the new evidence been before him when his decision was rendered."[29]

The Commissioner argues that the evidence is not material because it does not relate to Plaintiff's functioning during the relevant period (August 2009 through June 2012) but instead relates to late 2012. Although it does appear that the evidence relates to an irrelevant time period, the Court finds the evidence immaterial for an additional reason. There is no indication that the Commissioner's decision would have been any different based on this evidence. Even if this

---

[26] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted).

[27] *Id.*

[28] *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (citing 42 U.S.C. § 405(g)).

[29] *Id.* (quotation marks and citations omitted).

evidence relates to the relevant time period, Plaintiff does not direct the Court to any medical evidence demonstrating that Plaintiff would have a more limited functional capacity if this evidence would have been before the ALJ. Thus, the Court finds it unnecessary to remand the case for the ALJ to consider new and material evidence.

In conclusion, the Court finds that the ALJ's decision is supported by substantial evidence. Furthermore, there is no reason to remand the case. Thus, the Court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE